## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> HALOMD, LLC *et al.*, <br><br> Defendants. | Civil Action No. <br> 1:25-cv-02919-TWT <br><br> District Judge: Hon. Thomas W. Thrash, Jr. |

### DEFENDANT HALOMD'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BCBSGA'S AMENDED COMPLAINT

All of BCBSGA's opposition arguments (and claims) depend on peddling the fiction that: (i) the Independent Dispute Resolution ("IDR") process established by the No Surprises Act ("NSA") does not allow disputing parties to challenge eligibility; and (ii) Independent Dispute Resolution Entities ("IDREs") are required to rely on initiating party attestations when determining eligibility. But BCBSGA's opposition cannot salvage gross pleading defects with arguments that run counter to the NSA, its associated regulations, and controlling Eleventh Circuit precedent. *See Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.* ("*Reach Air*"), No. 24-10135, ___ F.4th ___, 2025 WL 3222820 (11th Cir. Nov. 19, 2025) (publication pending) (affirming dismissal of a claim for vacatur of an IDR award because

1

judicial review of IDR awards is limited to the grounds for vacatur available under the Federal Arbitration Act ("FAA"), and the plaintiff did not plausibly allege such grounds with particularity).[1] Nor can BCBSGA manufacture a factual dispute by misstating and omitting plain statutory and regulatory language.

As explained in Defendants' Motions to Dismiss, this Court should dismiss BCBSGA's Amended Complaint with prejudice.

## I. Congress Created the No Suprises Act to Ensure Fair Payment.

This lawsuit is about the NSA's IDR process. But while the IDR process is the focus of BCBSGA's allegations, the genesis of the NSA is equally important to understanding this case.

Before the NSA's passage, patients were frequently put in the middle of payment disputes between out-of-network providers and insurers like BCBSGA. If BCBSGA refused to pay fair rates, providers often could only seek recovery from patients. Patients who incorrectly believed—because of their BCBSGA insurance—that certain healthcare services were in-network were often surprised when they received a bill.

The NSA changed things. The NSA limits patients' financial responsibility for certain out-of-network services. But, because of this limitation, Congress created the

---

[1] The Eleventh Circuit's opinion in *Reach Air*, which was recently issued and is not yet published, is attached to this reply as **Exhibit A**.

2

IDR process to resolve disputes over appropriate payments for out-of-network services when there is no other authority governing payment (*e.g.*, a specified State law). *See* 45 CFR 149.510(a)(2)(xi) (Oct. 7, 2021); *see also Reach Air*, 2025 WL 3222820, at *1-2 (discussing the genesis of the NSA). To ensure federal courts were not overburdened by parties' dissatisfaction with IDRE decisions, Congress explicitly barred judicial review of IDRE determinations, except in limited cases for which vacatur was appropriate under the FAA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i).

## II.    BCBSGA Improperly Seeks to Amend the NSA Through Litigation.

Congress underestimated the market power imbalance between commercial healthcare insurers and providers. The IDR process has been a revelation. Providers, once foreclosed from challenging unfair insurance payments due to excessive litigation costs, now have the means through the IDR process to efficiently contest unfair payment rates and subject such rates to scrutiny.[2]

It is easy to understand why BCBSGA is threatened by the IDR process. It forces BCBSGA to pay fair rates for certain out-of-network services. BCBSGA is no doubt aware that if healthcare providers are better able to fight unfair rates, they

---

[2] As BCBSGA acknowledges, data published by the Centers for Medicare & Medicaid Services shows that, in cases that proceed to a payment determination, IDREs select the provider offer in approximately 85% of disputes. Am. Compl., Dkt. 43 at ¶ 105.

will be less willing to join BCBSGA's network, making it harder for BCBSGA to market and sell its insurance products.

Given this new reality—in what can only be described as an act of lawfare—BCBSGA and its affiliates have filed actions across the country against HaloMD, LLC ("HaloMD"), on which providers rely for assistance in resolving payment disputes through the IDR process. All of these actions lead with alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), a federal statute designed to dismantle organized crime syndicates.[3]

BCBSGA's strategy is obvious: impose debilitating litigation costs on HaloMD, intimidate the healthcare provider community, and hope that it can convince courts to judicially vandalize the NSA and the IDR process.

## III.    BCBSGA Does Not Allege Any Valid Basis for Liability.

As explained in HaloMD's motion, BCBSGA's ultimate war is not with HaloMD, it is with the NSA itself. But BCBSGA's hostility to the NSA cannot support BCBSGA's claims here. BCBSGA alleges that HaloMD is liable because it used the IDR process to submit: (1) improperly inflated offers; (2) large volumes of

---

[3] In addition to this action, BCBSGA's affiliates have filed similar cases against HaloMD and others in Ohio and California. *See Community Insurance Company v. HaloMD, LLC et al.,* Case No. 1:25-cv-00388-MWM (S.D. Ohio); *Anthem Blue Cross Life and Health Ins. Co., et al. v. HaloMD, LLC, et al.*, Case No. 8:25-cv-01467-KES (C.D. Cal.).

disputes; and (3) false and fraudulent attestations of eligibility. Am. Compl., Dkt. 43 at ¶¶ 72-110. None of these allegations supports any claim for relief.

First, BCBSGA's allegations of inflated offers provide no basis for recovery. BCBSGA concedes, as it must, that the amount of an IDR offer cannot constitute wire fraud. Opp., Dkt. 50 at p. 51, n.21. Indeed, no authority limits how much a party may offer in the IDR process. Rather, the IDR process is designed as a "baseball style" arbitration, whereby the IDRE selects (from the two offers submitted by the insurer and the provider) the offer that best represents the value of the service based on strict considerations set forth by Congress. *See* 42 U.S.C. § 300gg-111(c)(5)(C); 45 CFR 149.510(c)(4)(ii)(A) (Oct. 7, 2021).

As BCBSGA acknowledges, an IDRE may not consider a healthcare provider's billed charge (*i.e.*, the usual and customary charge) for the service at issue when making a payment determination. 42 U.S.C. § 300gg-111(c)(5)(D); Am. Compl., Dkt. 43 at ¶ 108. Instead, IDREs are bound by permitted and prohibited considerations in making payment determinations. *See* 42 U.S.C. §§ 300gg-111(c)(5)(C-D). That any HaloMD offer may have exceeded the billed charge is irrelevant and fails to account for, among other things, the increased costs a provider incurs when BCBSGA refuses to pay a fair rate outright, necessitating initiation of the IDR process to ensure fair payment. BCBSGA's contention is thus an indictment of its own payment practices. As BCBSGA itself alleges:

[P]rior to the enactment of the NSA, [the healthcare provider Defendants] rarely, if ever, recovered their full billed charges from patients or health plans. (Am. Compl., Dkt. 43 at ¶ 110).

It is for this reason that Congress created the IDR process.

Second, as to the volume of IDR proceedings allegedly initiated by HaloMD, BCBSGA cites no authority limiting the number of IDR proceedings that a party may initiate. Indeed, both the NSA and associated regulations impose strict timing requirements for initiating IDR proceedings and provide for the batching of similar disputes in certain circumstances. *See* 42 U.S.C. § 300gg-111(c) (providing the statutory framework for the IDR process, including treatment of batched items and services); 45 C.F.R. § 149.510 *et seq.* (providing IDR process implementing regulations). Put differently, BCBSGA essentially alleges that HaloMD is liable for complying with applicable statutory and regulatory deadlines.

BCBSGA's contention is also self-defeating. Even assuming the truth of BCBSGA's allegations, the only reason that HaloMD would initiate a high volume of IDR proceedings is because BCBSGA refused to fairly pay healthcare providers for the same volume of services. In other words, BCBSGA seeks to hold HaloMD and others liable for a problem of its own making.

Lastly, BCBSGA alleges that Defendants submitted false attestations of IDR eligibility. But, in attempting to plead the materiality of these attestations, BCBSGA

misrepresents the attestations themselves, the regulations governing the IDR process, and the process by which IDREs assess eligibility.

## IV.    IDREs Evaluate and Resolve Eligibility Disputes.

In its opposition, BCBSGA describes the NSA as an "honor system, under which providers self-certify dispute eligibility." Opp., Dkt. 50 at p. 1. BCBSGA's self-serving and misleading characterization of the IDR process is belied by governing NSA regulations. Notably, the Court does not, as BCBSGA contends, have to accept as true BCBSGA's baseless legal contentions—and its mischaracterizations—of how the IDR process works. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts need not accept as true legal conclusions lacking further factual support, or legal conclusions couched as factual allegations).

By regulation, an initiating party must attest that it believes that the items and services under dispute qualify for resolution via the IDR process when it notifies a party that it is initiating the IDR process. 45 C.F.R. § 149.510(b)(2)(iii)(A)(6) (Oct. 7, 2021). This attestation provides:

> I, the undersigned initiating party (or representative of the initiating party), attests that **to the best of my knowledge**…the item(s) and/or service(s) at issue are qualified item(s) and/or service(s) within the scope of the Federal IDR process. (emphasis added).

BCBSGA ignores the attestation's actual language, in both its Amended Complaint and its opposition. Specifically, BCBSGA ignores that the attestation is

expressly qualified: the attestor makes such attestation "to the best of [the attestor's] knowledge." Notably, no authority requires or directs the IDRE to rely upon the attestation to determine eligibility when it is disputed. Nor is the attestation a self-certification of eligibility. Rather, it is an attestation that an initiating party, "to the best of [its] knowledge," believes a dispute is eligible.[4]

This qualified attestation is materially different from other certifications used by the federal government to eliminate false claims. For example, the certification contained in the CMS-1500 form, which healthcare providers use when submitting claims for services to healthcare insurers (including Medicare and other federal healthcare programs), and which often provides the basis for alleged falsity and liability under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, is materially different. In the CMS-1500 form, the healthcare provider expressly certifies, among other things, that the claim complies with Medicare laws and that the services

---

[4] BCBSGA references the Notice of IDR Initiation Form containing the attestation in its Amended Complaint and in its opposition. Am. Compl., Dkt. 43 at ¶¶ 43, 54, 56, 79, 82; Opp., Dkt. 50 at p. 6. Accordingly, the Court may consider the form, which HaloMD submits as **Exhibit B** to this reply, in ruling on HaloMD's motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on a motion to dismiss, courts may consider documents incorporated into the complaint by reference and judicially noticed documents); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (providing that the court may consider a document in connection with a motion to dismiss if the document is central to the plaintiff's claims and undisputed). The Notice of IDR Initiation Form permits a healthcare provider to check "Unknown" when selecting the "Type of Plan" involved in the dispute.

reflected in the claim were medically necessary. *See United States v. Quest Diagnostics Inc.,* No. 24-12998, 2025 WL 1951196, at *1 (11th Cir. July 16, 2025) (discussing the CMS-1500 form certification). There is no "to the best of [the healthcare provider's] knowledge" qualifying language because: (i) the healthcare provider presumably has access to all information needed to conclusively make such certifications; and (ii) there is no counterparty that validates every Medicare claim submitted by a healthcare provider (*i.e.*, not every Medicare claim is audited).

IDREs are not required (or instructed) to rely on the attestation. By regulation, IDREs are required to independently make an eligibility determination in every single IDR proceeding. 45 C.F.R. § 149.510(c)(1)(v) (Oct. 7, 2021).  In fact, if an insurance company like BCBSGA wants to dispute eligibility, ***there is a specific regulatory process designed to resolve such disputes***. This process requires BCBSGA to submit eligibility challenges to the IDRE for consideration. 45 C.F.R. § 149.510(c)(1)(iii) (Oct. 7, 2021). ("[I]f the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party must…provide information regarding the Federal IDR process's inapplicability through the Federal IDR portal…").

As set forth explicitly in the Federal IDR Process Guidance for Certified IDR Entities:

## 4.4    Instances When the Non-Initiating Party Believes That the Federal IDR Process Does Not Apply

If the non-initiating party believes that the Federal IDR Process is not applicable, the non-initiating party must notify the Departments by submitting the relevant information through the Federal IDR portal as part of the certified IDR entity selection process. This information must be provided no later than 1 business day after the end of the 3-business day period for certified IDR entity selection, (the same date that the notice of selection or failure to select a certified IDR entity must be submitted). This notification must include information regarding the Federal IDR Process' inapplicability.

The certified IDR entity must determine whether the Federal IDR Process is applicable. The certified IDR entity must review the information submitted in the Notice of IDR Initiation and the notification from the non-initiating party claiming the Federal IDR Process is inapplicable, if one has been submitted, to determine whether the Federal IDR Process applies. If the certified IDR entity determines that the Federal IDR Process does not apply, the certified IDR entity must notify the Departments and the parties within 3 business days of making that determination, as described in Section 4. Further, the Departments will maintain oversight of the applicability of the Federal IDR Process through their audit authority.[5]

Nowhere is the IDRE directed to rely (exclusively or otherwise) upon the initiating party's attestation when determining eligibility. Instead, IDREs are directed to request and evaluate evidence submitted by the parties and their

---

[5] BCBSGA references an earlier version of the IDR Guidance for Certified IDR Entities guidance document in its opposition. Opp., Dkt. 50 at p. 8, n.3. With this reply, HaloMD submits both the version cited by BCBSGA, and the more recent operative version, for the Court's consideration. *See* **Exhibit C** (applicable to all items and services furnished before October 25, 2022), §§ 4.4, 4.6.2; **Exhibit D** (applicable to all items and services furnished on or after October 25, 2022) (including materially similar provisions relating to IDRE eligibility determinations).

explanations; the IDRE is only authorized to proceed if the documentation shows that the dispute is eligible. Importantly, when submitting their offers, all parties to the IDR proceeding have an opportunity to *again* challenge eligibility. If the IDRE finds a dispute ineligible, it "must notify…the parties within 3 business days of making that determination." 45 C.F.R. § 149.510(c)(1)(v) (Oct. 7, 2021).

Regulatory agencies also facilitate potential reconsideration of eligibility even after an IDRE payment determination. The Centers for Medicare & Medicaid Services ("CMS"), which oversees the IDR process, permits parties to re-open closed IDR proceedings for reconsideration of "jurisdictional error[s]," such as where the IDRE incorrectly determines eligibility.[6] The Amended Complaint conveniently ignores this reconsideration process, and BCBSGA's opposition mentions it only in passing by noting that the CMS guidance document announcing the process contained standard language providing that it did not create a new substantive legal standard. *See* Opp., Dkt. 50 at 19 n.4 (BCBSGA noting that the guidance document states it "is not intended to have the force of law.").

Yet, the process to contest eligibility is robust. BCBSGA has multiple opportunities to challenge eligibility; it is just often overruled. *See* Am. Compl., Dkt.

---

[6] BCBSGA also references the technical assistance guidance document announcing the reconsideration process. *See* Opp. at pp. 7, 19 n.4, 45 (linking to the Federal IDR Technical Assistance for Certified IDR Entities and Disputing Parties (June 2025)). This technical assistance guidance document is attached as **Exhibit E.**

43 at ¶¶ 87, 99, 102, 139, 159, 175, 176, 204, 213, 223 (referencing BCBSGA's objections to eligibility). While BCBSGA alleges that its objections are overruled because IDREs rely upon false attestations, BCBSGA concedes that this allegation cannot support liability as it expressly admits in its opposition that:

> "*[i]t is…impossible to know* whether an IDRE considered any information beyond a provider's attestation or what reasoning it employed to find a dispute eligible." Opp., Dkt. 50 at p. 8 (emphasis added).

BCBSGA cannot manufacture theories of liability that directly conflict with existing processes established by the NSA and its associated regulations.

And this is the heart of the matter. BCBSGA does not like IDRE decisions. But its dissatisfaction with IDRE determinations cannot justify burdening this Court with what is fundamentally an impermissible appeal of IDRE decisions.

## V.    BCBSGA Cannot Selectively Apply the No Surprises Act's Judicial Review Prohibition.

In the NSA, Congress was unequivocal: "[an IDRE] determination…shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [IDRE]; and shall not be subject to judicial review, except in a case [that would allow a court to vacate the award under the Federal Arbitration Act]." 42 U.S.C. § 300gg-111(c)(5)(E)(i).

Given this bar against judicial review, many other federal courts have already concluded that "[t]he only right of action provided [in the NSA] derives from the

incorporated vacatur sections of…the FAA." *Guardian Flight, L.L.C. v. Health Care Serv. Corp.* ("*Guardian Flight I*"), 140 F.4th 271, 275 (5th Cir. 2025); *see also Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.* ("*Guardian Flight II*"), 140 F.4th 613, 620 (5th Cir. 2025) ("[If a party] wish[es] to seek vacatur of [IDRE] awards, they must do so through the FAA paragraphs explicitly incorporated for that purpose."); *Worldwide Aircraft Servs. Inc. v. Worldwide Ins. Servs., LLC*, No. 8:24-CV-840-TPB-CPT, 2024 WL 4226799, at *2 (M.D. Fla. Sept. 18, 2024) ("If no ground for vacatur exists, the arbitration award must be confirmed.").

In its opposition, BCBSGA argues that the NSA's "incredibly narrow" judicial review provision only applies to IDRE payment determinations, not IDRE eligibility determinations. Opp., Dkt. 50 at p. 24. But BCBSGA's effort to carve out IDR eligibility determinations misreads the NSA's statutory text and is incompatible with its structure. Read holistically and in context, the NSA's bar on judicial review encompasses all IDRE determinations that are predicates to a payment determination. BCBSGA's contrary view—which is linguistically untenable—would invite piecemeal collateral attacks and frustrate the purpose of the IDR process.

Prior to making a payment determination, IDREs must first resolve numerous threshold issues (*e.g.*, whether timing requirements were satisfied, whether parties paid required fees, *etc*.). Neither the NSA nor implementing regulations bifurcate

IDRE determinations into reviewable and unreviewable functions. Eligibility is a gateway determination that the IDRE must make in every IDR proceeding. Treating that gateway as severable from the IDRE payment determination effectively asks this Court to rewrite the NSA and render the NSA's judicial review prohibition meaningless.

BCBSGA is wrong to insist that there is a general presumption of judicial review that applies here. As BCBSGA acknowledges, the presumption may be overcome by "clear and convincing indications that Congress meant to foreclose review." Opp., Dkt. 50 at p. 22 (citations omitted). Here, Congress incorporated 9 U.S.C. § 10(a)(1)-(4) as the exclusive grounds for vacatur of IDRE determinations. That specific, tailored statutory provision limiting judicial oversight is the necessary "clear and convincing" indication. The question is not whether Congress could have written an even more sweeping clause; it is whether the NSA's statutory text, read in context, "clearly and convincingly" limits judicial review of IDRE determinations. It indisputably does.

BCBSGA argues that the NSA permits collateral attacks because "the NSA does not incorporate any of the FAA's procedural provisions, much less impose them as exclusive remedies." Opp., Dkt. 50 at p. 26. In support, BCBSGA cites *Med-Trans Corp. v. Cap. Health Plan, Inc.* ("*Med-Trans*"), 700 F. Supp. 3d 1076, 1082 (M.D. Fla. 2023) and *Guardian Flight I*, 140 F.4th 271. While BCBSGA's proffered

14

interpretation would effectively rewrite the NSA's judicial review prohibition, *Guardian Flight I* and *Med-Trans* only addressed whether the NSA created a private cause of action to enforce IDR awards. But neither case supports the proposition that the NSA permits **collateral attacks** on IDRE determinations. Indeed, no court has ever interpreted the NSA to permit federal courts to hear challenges to IDR awards except via a vacatur claim in narrow circumstances. Accordingly, apart from BCBSGA's vacatur claim (Count 10)—which independently fails for other reasons—all of BCBSGA's claims are impermissible collateral attacks on IDR awards. The Court should dismiss them for this reason alone.

## VI.  BCBSGA's Argument in Support of Vacatur is Contrary to Controlling Eleventh Circuit Precedent.

While BCBSGA alleges that it has adequately pleaded grounds for vacatur (Opp., Dkt. 50 at p. 29), BCBSGA's contention is contrary to controlling Eleventh Circuit precedent. In *Reach Air*, ___ F.4th ___, 2025 WL 3222820 (11th Cir. Nov. 19, 2025) (publication pending), the Eleventh Circuit addressed pleading requirements in connection with a claim for vacatur of IDR awards.[7]

---

[7] The Eleventh Circuit issued the *Reach Air* opinion in the appeal of the *Med-Trans* decision relied upon by BCBSGA in its opposition. The *Med-Trans* district court simultaneously dismissed two cases brought by air ambulance services providers (Med-Trans Corporation and Reach Air Medical Services LLC) seeking to vacate IDR awards. After both air ambulance services providers appealed, Med-Trans Corporation settled its dispute, leaving only Reach Air Medical Services LLC's appeal pending. *Reach Air*, 2025 WL 3222820 at *3 n.1.

In *Reach Air*, the plaintiff air ambulance services provider sought to vacate an IDR award on the grounds that: (a) the award was procured by fraud, and (b) the IDRE exceeded its powers—the grounds that BCBSGA relies on here.[8] Specifically, the plaintiff alleged that the defendant insurer misrepresented its median contracted rate (otherwise known as the "qualifying payment amount" or "QPA") for the service at issue and that the IDRE impermissibly applied an illegal presumption in favor of the allegedly misrepresented QPA.

The district court granted the defendant insurer's motion to dismiss for failure to state a claim. The plaintiff appealed, and the Eleventh Circuit affirmed. In affirming, the Eleventh Circuit ruled that, with respect to the allegation that the IDREs exceeded their powers under 9 U.S.C. § 10(a)(4):

> "It is not enough to show that the arbitrator committed an error – or even a serious error…Under our current scheme, an arbitrator's actual reasoning is of such little importance to our review that it need not be explained -- the decision itself is enough…Our sole question under § 10(a)(4) is whether the arbitrator (even arguably) performed the assigned task, not whether she got the outcome right or wrong."

*Reach Air*, 2025 WL 3222820 at *5 (internal quotations and citations omitted).

---

[8] While BCBSGA alleges in the Amended Complaint that "each IDR determination at issue" was procured by undue means (Am. Compl., Dkt. 43 at ¶¶ 252, 254), BCBSGA effectively abandons this alleged grounds for vacatur by not responding to HaloMD's argument in its motion to dismiss that BCBSGA does not allege any undue means. *See Holland v. Dep't of Health & Hum. Servs.*, 51 F. Supp. 3d 1357, 1376-77 (N.D. Ga. 2014) (citing cases providing that a plaintiff abandons a claim by not responding to a defendant's argument).

The Court also reiterated that to plausibly plead that an IDR award was procured by fraud under 9 U.S.C. § 10(a)(1), a party must allege facts: (1) establishing the fraud by clear and convincing evidence; (2) showing the fraud was not discoverable upon the exercise of due diligence prior to or during the arbitration; and (3) demonstrating the fraud materially related to an issue in the arbitration. *Id.* at *6.

Applying these principles, the Eleventh Circuit concluded that the plaintiff had not plausibly pleaded any ground for vacatur. After first determining that "none of the[] circumstances [in which an arbitrator exceeds its authority], or anything even remotely resembling them [was] present," the Eleventh Circuit rejected the plaintiff's "conclusory argument" that the IDRE exceeded its authority. *Id*. The court further concluded that the plaintiff had not sufficiently alleged fraud as a basis for vacatur as required by Fed. R. Civ. P. 9(b). *Id*. at *6-8 (noting that the complaint failed to allege numerous key details including: the "time and place of each statement and the person responsible for making" the statement, "the manner in which the [fraudulent statements] misled" the plaintiff, what the insurer "obtained as a result of the alleged fraud," and how the alleged misrepresentation was connected to the IDRE's determination).

Here, BCBSGA's claim for vacatur is even weaker. Not only does BCBSGA allege no facts with respect to the "thousands of knowingly ineligible IDR disputes"

that it seeks to vacate (Am. Compl., Dkt. 43 at ¶ 72), BCBSGA also fails to allege any concrete facts that would establish that HaloMD engaged in fraudulent conduct (let alone any conduct that was not discoverable during the course of any IDR proceeding). Rather, BCBSGA alleges that HaloMD submitted attestations providing that it believed disputes were eligible for the IDR process to the best of its knowledge.

But BCBSGA cites no authority suggesting that the submission of information believed to be true at the time of submission amounts to "fraud" within the meaning of the FAA. Nor does it allege any facts establishing that HaloMD subjectively believed that attestations were false and submitted the attestations anyway. At any rate, eligibility determinations are squarely within an IDRE's authority, as IDREs must make eligibility determinations in every IDR proceeding. *See* 45 C.F.R. § 149.510(c)(1)(v) (Oct. 7, 2021); IDR Process Guidance for Certified IDR Entities §§ 4.4, 4.6.2, attached as **Exhibits C** and **D**.

## VII. BCBSGA Cannot Relitigate Eligibility.

While IDREs necessarily decide eligibility in every IDR proceeding, BCBSGA argues it is not collaterally estopped from disputing eligibility because: (i) IDREs do not determine whether HaloMD engaged in fraud, (ii) disputing parties do not litigate eligibility before the IDRE, and (iii) BCBSGA did not have a "full and fair opportunity" to litigate the issue of eligibility. These contentions are belied by

18

the regulations governing the IDR process. BCBSGA cites 45 C.F.R. § 149.510(c)(1)(v) (Oct. 7, 2021) for the proposition that:

> For each individual IDR proceeding, an IDRE "must review the information submitted in the notice of IDR initiation"—**with the provider's attestation of eligibility**—"to determine whether the Federal IDR process applies. (Opp., Dkt. 50 at pp. 8, 36, 38) (emphasis in original).

But the bolded language inserted by BCBSGA is not part of the regulation. No authority—statutory, regulatory, or otherwise—directs the IDRE to rely upon the initiating party's attestation in determining eligibility, which, as set forth above, the IDRE must do in every single IDR proceeding. Thus, the only misrepresentations in this case are BCBSGA's arguments regarding the IDR process, the initiating party's attestation, and applicable regulatory authorities. BCBSGA's presumption that the IDRE merely relies on the attestation in determining eligibility has no plausible basis. *See also* Opp., Dkt. 50 at p. 8 (BCBSGA stating that it is "impossible to know" what IDREs considered when making eligibility determinations).

A non-initiating party has multiple opportunities to produce information demonstrating ineligibility before the IDRE makes a payment determination. Again, BCBSGA often objects to eligibility. *See* Am. Compl., Dkt. 43, ¶¶ 87, 99, 102, 139, 159, 175, 176, 204, 213, 223. While BCBSGA's objections are often overruled, that fact does not mean that the issue of eligibility is not actually litigated.

BCBSGA's suggestion that the IDR process is flawed because IDREs are paid for their time is yet another improper policy argument attacking the NSA. By BCBSGA's logic, every paid arbitrator is biased simply because they are paid for their time. IDREs are certified, and NSA regulations permit a non-initiating party to object to the IDRE selected by the initiating party for any reason. 45 C.F.R. § 149.510(c)(1)(i) (Oct. 7, 2021). If the parties cannot agree on an IDRE, CMS selects an IDRE through a random selection method. 45 C.F.R. § 149.510(c)(1)(iv) (Oct. 7, 2021). This is all to say: the IDR process has inherent checks to ensure IDREs exhibit impartiality. BCBSGA cites no authority suggesting that the collateral estoppel doctrine is categorically inapplicable under these circumstances.

## VIII.  BCBSGA's RICO and Fraud Claims Fail.

BCBSGA also cannot overcome fatal RICO and fraud pleading deficiencies. As noted above, BCBSGA concedes that claims volumes and settlement offers do not constitute wire fraud. Opp., Dkt. 50 at p. 51, n.21. And BCBSGA's false attestation claims—the premise for its entire case—cannot stand.

First, BCBSGA's opposition does not meaningfully dispute that the Amended Complaint fails to show a "direct relationship," *i.e.*, but-for and proximate causation, between Defendants' alleged eligibility attestations and any injury. *See* HaloMD Mot., Dkt. 47-1 at pp. 33-34; *see also Kittrell v. Allen*, No. 1:24-cv-00786-SDG, 2025 WL 698128, at *3 (N.D. Ga. Mar. 4, 2025). BCBSGA does not even address

the fact that IDREs, sitting as neutrals, decide eligibility before assessing payment offers. Each of these independent adjudicative actions severs any direct causal link between an attestation and the ultimate outcome. *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 15 (2010) (no proximate cause where "theory of liability rests on the independent actions of third and even fourth parties"); *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Instead, in a footnote, BCBSGA points to *Bridge v. Phoenix Bond Indem. Co.*, 553 U.S. 639 (2008), to argue BCBSGA need not rely directly on the attestations. *See* Opp., Dkt. 50 at pp. 54-55, n.23. But *Bridge* reaffirms the obligation to prove both but-for and proximate causation; the case merely recognizes that first party reliance on an alleged fraudulent statement is not necessary. *Bridge*, 553 U.S. at 655-56. Here, BCBSGA has bigger problems. It is not just that BCBSGA did not rely on the attestations when it evaluated eligibility; ***no one did***.

BCBSGA also string cites three cases, *United States v. Aldissi*, 758 F. App'x 694 (11th Cir. 2018), *United States v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009), and *United States v. Baker*, 648 F. App'x 830 (11th Cir. 2016), for the proposition that the attestations generally may support wire fraud claims. Opp., Dkt. 50 at pp. 49-50. But those cases are not controlling for three reasons.

First, each involved verifiable factual deceptions—not "best-of-knowledge" belief statements as is the case here. *See Aldissi*, 758 F. App'x at 698 (multiple lies and forgeries); *Maxwell*, 579 F.3d at 1288-89 (large corporation falsely stated small and disadvantaged businesses would perform government contract work); *Baker*, 648 F. App'x at 830 (false claim by bank that it was eligible to participate in the FDIC's Temporary Liquidity Guarantee Program). Second, and more fundamentally, BCBSGA's cited cases involved attempts to garner government benefits. Here, IDR eligibility attestations are different in kind because they entail a best-of-knowledge statement that a dispute is eligible to submit *to a neutral factfinder for adjudication*. Third, none of the cases BCBSGA cites relieves it of its burden to plausibly allege proximate cause. *See Bridge*, 553 U.S. at 655-56 (affirming proximate cause requirement).

BCBSGA cannot establish proximate cause here; it admits that it is "impossible" to know what IDREs consider when determining eligibility. Opp., Dkt. 50 at p. 8. As detailed above, BCBSGA mischaracterizes the attestations, which are statements made to the best of one's belief, not assertions of absolute fact. As the Amended Complaint makes clear, BCBSGA is often exclusively in possession of material information relating to NSA applicability and IDR process eligibility. So it makes sense that the Amended Complaint lacks any non-conclusory allegations

establishing scienter, *i.e.*, that HaloMD **actually knew** (and to the best of its knowledge believed) that any dispute was ineligible.

Despite BCBSGA's argument that "examples of actual false claims" suffice (Opp., Dkt. 50 at pp. 51-52)(quotation and citation omitted), the Amended Complaint's purported example IDR proceedings (*see* Am. Compl., Dkt. 43, ¶¶ 135-60) confirm that the Amended Complaint fails to meet Fed. R. Civ. P. 9(b)'s stringent standards for fraud-based claims. Indeed, in two alleged IDR proceedings, HaloMD *played no role at all in making the attestation*. *See* Am. Compl., Dkt. 43, ¶¶ 154, 158. In the others, after treating BCBSGA patients, the providers submitted bills, which BCBSGA rejected, prompting the providers to open negotiations. *See id*. ¶¶ 135-37, 141, 144, 148-49. According to BCBSGA, in these disputes, it communicated directly with the providers, not HaloMD, and HaloMD played no role whatsoever in submitting the bills or initiating open negotiations. *Id.* Only after negotiations between BCBSGA and the providers failed did HaloMD allegedly initiate IDR proceedings. *See*, *e.g.*, Am. Compl., Dkt. 43, ¶¶ 138, 142, 145. But BCBSGA does not identify the HaloMD employee(s) who initiated the proceedings or allege that HaloMD or any of its employees: (a) actually knew what BCBSGA told the providers, or (b) actually knew that any dispute was ineligible.

Rather, BCBSGA lumps HaloMD and others together for purposes of scienter and offers no non-conclusory allegations that any Defendant intended to commit a

crime, let alone entered into an agreement to do so. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (dismissing RICO claims that lumped defendants together in fraud allegations); *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020) ("blending" defendants' identities in fraud allegations "is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent.").[9]

BCBSGA's pivot to *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1174 (N.D. Ga. 2024), is misplaced (*see* Opp., Dkt. 50 at pp. 57-58). The *Aquino* plaintiffs alleged that the defendants had a reason to know they were participating in an employment visa fraud scheme because they essentially acted as joint employers. *Aquino*, 739 F. Supp. 3d at 1174-75. Not so here. Instead, here, the providers treat patients, bill BCBSGA, and attempt to negotiate fair payment. When negotiations fail, they turn to HaloMD to initiate IDR proceedings pursuant to a separate arrangement. BCBSGA's non-conclusory allegations establish nothing more.

---

[9] The Court can independently dismiss the Amended Complaint as a shotgun complaint since each count is alleged against each defendant, and each count incorporates every allegation that preceded it. *Farr v. CTG Hosp. Grp., LLC*, No. 1:22-CV-883-TWT, 2024 WL 4637126, at *1 (N.D. Ga. Oct. 29, 2024) ("The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.") (citations omitted); *see also Team Herschel, Inc. v. Scott Howell & Co., Inc.*, 1:24-CV-02859-TRJ, 2025 WL 1527072 (N.D. Ga. May 7, 2025) (*sua sponte* raising similar shotgun pleading concern).

## IX.    Conclusion.

BCBSGA's Amended Complaint invites the Court to rewrite the NSA and act as a super regulator with the power to review thousands of IDRE payment decisions. The Court should decline that invitation.  BCBSGA's dissatisfaction with NSA and the IDR process—and its discomfort with the IDR process's revelations—is not the basis for a legal claim.  For these reasons, and for those many other reasons set forth in Defendants' Motions to Dismiss, this Court should dismiss the entirety of BCBSGA's Amended Complaint with prejudice.

Respectfully submitted, this 21st day of November, 2025.

| | |
|---|---|
| */s/ Kamal Ghali* | */s/ Jonah D. Retzinger* |
| Kamal Ghali | Jonah D. Retzinger (*pro hac vice*) |
| Georgia Bar No. 805055 | jretzinger@nixonpeabody.com |
| kghali@chaikenghali.com | Christopher D. Grigg (*pro hac vice*) |
| Matthew A. Josephson | cgrigg@nixonpeabody.com |
| Georgia Bar No. 367216 | Brock J. Seraphin (*pro hac vice*) |
| mjosephson@chaikenghali.com | bseraphin@nixonpeabody.com |
| Michael C. Duffey | April C. Yang (*pro hac vice*) |
| Georgia Bar No. 710738 | ayang@nixonpeabody.com |
| mduffey@chaikenghali.com | NIXON PEABODY LLP |
| CHAIKEN GHALI LLP | (213) 629-6000 (Telephone) |
| (404) 795-5005 (Telephone) | |
| (404) 581-5005 (Facsimile) | |

*Counsel for Defendant HaloMD, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Local Rules 5.1C and 7.1D, I hereby certify that the foregoing was prepared in Times New Roman 14-point font, double-spaced, with a top margin of not less than 1 inch and a left margin of not less than 1 inch.

This 21st day of November, 2025.

/s/ Kamal Ghali
Kamal Ghali

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused to be served a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BCBSGA'S AMENDED COMPLAINT** by filing the same with the Court's electronic case management system, which automatically serves counsel of record.

This 21st day of November, 2025.

*/s/ Michael C. Duffey*
Michael C. Duffey
